UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

"IN ADMIRALTY"

CASE NO:

NOBLE HOUSE, LLC,

    Plaintiff,

v.

DERECKTOR FLORIDA, INC.,

    Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, NOBLE HOUSE, LLC (hereinafter "Plaintiff" or "Noble House"), hereby sues DERECKTOR FLORIDA, INC. (hereinafter "Defendant" or "Derecktor"), as follows:

**PRELIMINARY STATEMENT**

1. This is an action for negligence related to Defendant's faulty work on the Plaintiff's commercially registered charter vessel, a 2005 177' Sensation Yachts Tri-Deck then named the M/V NOBLE HOUSE (hereinafter the "Vessel").

2. In this action Plaintiff seeks to recover damages caused by Defendant's negligence including, the cost of repairing the vessel, lost profits, other consequential damages, and attorneys' fees and costs.

**PARTIES AND JURISDICTION**

3. Plaintiff, Noble House, is a Republic of Marshall Islands limited liability company and was the owner of Record of the Vessel at all relevant times.

4. Defendant, Derecktor, is a refit and repair facility located at 775 Taylor Lane, Dania, Florida 33004.

5. This action arises from Defendant's negligent maintenance and repair work, among other things, performed on a vessel, which vests this Court with admiralty jurisdiction pursuant to 28 U.S.C. § 1333.

6. Plaintiff brings this suit "In Admiralty" pursuant to Rule 9(h).

7. Venue is proper in the United States District Court for the Southern District of Florida because the Defendant's negligence occurred in whole or in part in Dania, Florida when the Plaintiff's Vessel was located at Defendant's refit and repair facility in Dania, Florida.

## RELEVANT FACTS

8. On or about August 1, 2016, Plaintiff's Vessel arrived at Derecktor's shipyard, located 775 Taylor Lane, Dania, Florida 33004 to undergo refit and repair work.

9. Derecktor's holds itself out as being "refit central" "refit savvy" and claims their yard is "specifically designed and equipped for servicing today's ultra-sophisticated megayachts".[1]

10. Plaintiff's Vessel remained at Derecktor's shipyard for more than a year until September 20, 2017.

11. From August 1, 2016 through September 20, 2017, while the Vessel was located at Derecktor's shipyard, Derecktor's performed refit and repair work on the Vessel.

12. From November 17, 2016 through December 14, 2016, Derecktor performed over 50 hours of work related to the Vessel's rudders.

13. From August 31, 2017 through September 20, 2017, Derecktor performed an additional 50 hours of work related to the Vessel's rudders.

---

[1] https://derecktor.com/derecktor-florida/shipyard/

14. The work Derecktor performed to the Vessel's rudders fell below industry standard and did not comply with the requirement of the Vessel's classification society, the American Bureau of Shipping ("ABS"), because it failed to secure the heavy hex nut of the port rudder and deviated from the ABS approved plan.

15. On or about August 20, 2018, while the Vessel was navigating from Great Exuma, The Bahamas to Ft. Lauderdale, Florida, the port rudder fell away from the Vessel allowing seawater to flood the Vessel at a rate that would cause it to sink.

16. Because the Vessel was sinking, the Vessel's Captain ordered the crew to abandon ship except for essential crew who remained onboard with the Captain in an effort to save the Vessel.

17. The Vessel partially sank, however, the total loss of the Vessel was prevented through the combined efforts of the Vessel's crew and a group of local salvors who responded to the Vessel's mayday call and used scuba divers to patch the Vessel from the outside.

18. Despite the efforts of the Vessel's crew and the local salvors, the Vessel was badly damaged.

19. Plaintiff was also required to pay for the salvage services of the local salvors in the amount of $700,000.00.

20. Upon information and belief, the port rudder fell away from the Vessel because of the non-ABS approved method Derecktor used to secure the heavy hex nut which was intended to hold the rudder in place.

21. Derecktor, through its principals, employees, agents, representatives, vendors, and related and/or subsidiary entities, without the consent or approval of the Plaintiff, changed the size of the hex nut securing mechanism and installed the rudder in a manner

that did not comply with the requirements of the Vessel's classification society and/or fell below industry standard.

22. As a result of the Derecktor's faulty work, including the non-compliant and/or improperly sized hex nut securing mechanism, the Plaintiff suffered damages including salvage expenses, the cost of repairs and replacement of damaged parts and equipment, dockage expenses, and lost profits as well as other losses.

## COUNT I - NEGLIGENCE

Plaintiff adopts and incorporates the allegations in paragraphs 1 through 22 above and further states:

23. Defendant Derecktor as well as its principals, employees, agents, representatives, vendors, related and/or subsidiary entities, and other within its control, had a duty to use reasonable care in the performance of their work on the Vessel.

24. Defendant Derecktor directly and/or through its principals, employees, agents, representatives, vendors, and related and/or subsidiary entities breached their duty of care, by (among other things), failing to used reasonable care in their planning, maintenance, re-installation, engineering, and performance of flag state compliance procedures related to the Vessel's rudder system.

25. Derecktor is responsible for its own negligence and is vicariously liable for its principals, employees, agents, representatives, vendors, related and/or subsidiary entities, and others within its control.

26. It was reasonably foreseeable that the actions or failures to act by the Defendant and/or its respondents could result in the damages alleged by Plaintiff.

4

27. The Defendant also owed a duty of care to the Plaintiff to perform work and to supervise the refit and repair of the Vessel to ensure that its actions did not cause damage to, affect, or harm the Plaintiff's Vessel.

28. Derecktor breached its duty of care by failing to use reasonable care in directing and/or supervising the workers, vendors, and subcontractors performing the refit of the Vessel.

29. As a direct and proximate result of Derecktor's negligence and the negligence of individuals and entities Derecktors must answer for, Plaintiff has suffered damages, including but not limited to, the cost of repair and restoration of the Vessel, diminution in value of the Vessel, the cost of a marine surveyors, salvor expenses, dockage expenses lost profits and other expenses.

WHEREFORE, Plaintiff demands judgment against Defendant together with any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted and any other relief that this Court deems proper.

## COUNT II: BREACH OF CONTRACT

Plaintiff adopts and incorporates the allegations in paragraphs 1 through 22 above and further states:

30. On information and belief, Defendant Derecktor and Plaintiff entered into a written contract whereby Derecktor agreed to provide certain services and materials to the Vessel and Plaintiff agreed to pay for Derecktor's work. This contract has been lost and therefore is not attached.

31. Plaintiff fully performed its obligations under the Contract by paying the amount due Derecktor.

32. Derecktor breached the Contract by providing substandard work and by overbilling the Plaintiff for the work.

33. As a direct and proximate result of Derecktor's breach of contract, Plaintiff has suffered damages, including but not limited to, the cost of repair and restoration of the Vessel, diminution in value of the Vessel, the cost of a marine surveyors, salvor expenses, dockage expenses and other expenses.

WHEREFORE, Plaintiff demands judgment against Defendant together with any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted and any other relief that this Court deems proper.

## COUNT III: UNJUST ENRICHMENT

Plaintiff adopts and incorporates the allegations in paragraphs 1 through 22 above and further states:

34. Plaintiff conferred a monetary benefit on Derecktor in the form of monies paid for the refit work.

35. Derecktor appreciates or has knowledge of the benefits conferred directly upon it by Plaintiff.

36. The monies paid for the purchase of goods and services by Plaintiff to Derecktor during the period of time that Derecktor was involved in the refit of the Vessel were supposed to be used by Derecktor, in part, to pay for the parts and labor for the installation.

37. Derecktor failed to perform its work to a level at or above industry standard and billed more than the amount agreed; therefore, Plaintiff overpaid Defendant for the parts and services purchased.

38. Under principles of equity and good conscience, Defendant should not be permitted to retain the money paid because Derecktor failed to provide adequate mechanical and other services to Plaintiff's Vessel, which were paid for but not provided in a competent manner.

39. It would be inequitable under established unjust enrichment principles for Derecktor to be permitted to retain any of the financial benefits, monies, profits and overcharges derived from Derecktor's conduct.

40. Derecktor should be compelled to disgorge all funds received by Derecktor in connection with the work performed on the Vessel.

## COUNT IV – BREACH OF WARRANTY OF WORKMANLIKE PERFORMANCE

41. The Plaintiff re-alleges, incorporates by reference and adopts paragraphs 1 through 22 as though they were originally set forth herein.

42. Defendant had a duty to perform its work in a good and workmanlike manner and impliedly warranted that it had done so.

43. Defendant breached its duty by performing substandard, non-ABS compliant work among other things.

44. As a direct and proximate result of Derecktor's breach, the Plaintiff has suffered damages, including but not limited to, the cost of repair and restoration of the vessel, diminution in value of the vessel, the loss of use, including charter, of the vessel, the cost of a marine surveyor and other consulting experts such, but not limited to, naval architects, fiberglass consultants and infra-red consultants, the value of the time of Plaintiff's officers and employees in dealing with the problems with the Vessel's repairs, and attorney's fees incurred by the Plaintiff in this matter.

WHEREFORE, Plaintiff demands judgment against Defendant together with any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted and any other relief that this Court deems proper.

Dated:  November 30, 2020				Respectfully Submitted,

**MOORE & COMPANY, P.A.**
*Counsel for Plaintiff*
255 Aragon Avenue, 3rd Floor
Coral Gables, Florida 33134
Telephone: (786) 221-0600
Facsimile: (786) 221-0601
Email: cjaramillo@moore-and-co.com
Email: michael@moore-and-co.com
Email: cnaughton@moore-and-co.com


s/Michael T. Moore
Florida Bar No. 207845