UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

IN ADMIRALTY

CASE NO: 20-cv-62438-GAYLES/STRAUSS

NOBLE HOUSE, LLC,

    Plaintiff,

v.

DERECKTOR FLORIDA, INC.,

    Defendant.
_____/

### PLAINTIFF'S MOTION FOR RECONSIDERATION OR TO ALTER AND AMEND FINAL JUDGMENT

Pursuant to Federal Rules of Civil Procedure Rule 59(e) and 60, Plaintiff, by and through undersigned counsel, hereby files this Motion for Reconsideration or to Alter and Amend the Court's Final Judgment for Defendant (the "Order"), orally entered at the close of trial on Friday June 16, 2023, and in support thereof states:

### Preliminary Statement

At the close of trial on June 16, 2023, the Court orally delivered findings of fact and conclusions of law finding that the evidence was insufficient to carry Plaintiff's burden to show Derecktor failed to re-install the securing bolt that acted as part of system intended to secure the Vessel's rudders. The Court's finding and conclusion only addressed liability issues related to the reinstallation of securing bolt. Plaintiff requests the Court reconsider its findings of fact, conclusions of law, and its final judgment in favor of Defendant to consider Plaintiff's second, independent basis for liability, claiming: Derecktor breached the parties' contract and the warranty

of workmanlike performance because the flat metal bar Derecktor admits it installed as a "secondary" rudder locking mechanism fell below industry standard, was unapproved by class, and was so badly designed and fabricated that it failed within 8 months of installation, allowing the rudder to fall away and resulting in Plaintiff's damages.

## FACTS AND ARGUMENT

1. As Plaintiff argued during trial, even if the evidence is insufficient to prove Derecktor failed to reinstall the securing bolt, Derecktor none the less breached the parties' contract and the warranty of workmanlike performance implied in all maritime contracts because it is undisputed that the additional "flat metal bar" rudder securing device installed by Defendant was poorly designed, badly fabricated, made of substandard "mild steel". Trial Tr. 5-4-23 pp. 33:16-35:8[1]; 45:22-46:14.  Indeed, Defendant's own witnesses conceded that the poor design of Derecktor's flat metal bar locking mechanism made it incapable of performing its intended purpose of preventing the Vessel's rudder from falling out of the Vessel.  Trial Tr. 5-4-23 pp. 33:16- 35:8.

2. The Court did not consider Derecktor's liability for undertaking to install a backup locking mechanism and failing to design and fabricate this mechanism in a manner that met industry standards.  Instead, the Court found that the circumstantial evidence showing that the securing bolt and angle iron were not found on the surviving rudder, the fact that no physical evidence was found that the bolt had ever been installed on either rudder, and that a nonconforming flat metal bar was installed by Derecktor on both rudders as a securing mechanism was insufficient

---

[1] "Either way, Your Honor, whether the bolt was in place or not, there was a failure and a breach of this warranty of workmanlike performance because the flat metal bar that was added that Mr. Ramos says in his deposition was intended to keep the rudder in place was fabricated in a manner that was not workmanlike…"

when balanced against the testimony of two of Defendants' employees who claimed the securing bolt had been re-installed and that the flat metal bar was an additional "bonus" locking mechanism. Trial Tr. 6-16-23, pp. 4-7.

3. The Court found that Defendant's suggestion of sabotage was unfounded given that the flat metal bar was still in place and noted that Derecktor's employees responsible for installing the retaining bolt were Defendant's employees and therefore had a motive to lie. Nonetheless, the Court found that the evidence was insufficient to prove by a preponderance of the evidence that Derecktor failed to install the securing bolt when it reinstalled the Vessel's rudders eight months prior to the loss. Trial Tr. 6-16-23, pp. 4-7.

4. However, the failure of the poorly design and fabricated flat metal bar locking mechanism Derecktor installed, whether it was intended to serve as the primary or secondary rudder securing device, lead directly to loss of the rudder and resulting flooding of the Vessel, as well as the need for the assistance of salvors and other damages. If the flat metal bar had functioned as intended, the Vessel's rudder would not have been lost. Trial Tr. 5-4-23, pp. 33:16 – 35:8.

5. Joel Ramos, the Derector employee responsible for reinstalling the Vessel's rudders, testified by deposition that he fabricated and installed the flat metal bar and added it to the rudder as an additional security device to prevent the rudder from slipping out of the Vessel. Ramos Dep., DE 154-1, pp. 69-72[2].

6. Ramos testified: Q: *....Are you telling me that the purpose of the flat metal bar is to stop the rudder from falling down should the rudder begin to slip out?" A: "Yes, it could. On my personal opinion, it will never happen if the locking mechanism is there."* Ramos Dep., DE 154-1, pp. 70-71.

---

[2] The depositions of Ramos and Sabety were entered into evidence on 5.4.23 after the Court ruled on objections. Trial Tr. 5-4-23, 3:19-22.

7. Ramos testified that he was instructed to add this securing device to the Vessel by his supervisor, Scott Sabety. *Id.*

8. Scott Sabety testified by deposition that he instructed Ramos to fabricate and install the flat metal bar as an additional measure to secure the Vessel's rudders in place. Specifically, Sabety testified that with the flat metal bar installed by Derecktor "[the rudder], you know, it couldn't fall through the boat with that on there." Specifically, Sabety testified:

> ·8· · · · Q.· Okay.· What holds the rudder in place?
> ·9· · · · A.· I'd have to see a drawing to really give you a
> 10· ·good answer on that because, you know, a lot of times
> 11· ·they have a tapered shaft where the tiller goes in. I
> 12· ·believe this had that.· So that's, you know, that's
> 13· ·one mechanism that will hold it.· The next would be
> 14· ·the nut, the large nut on top of the tiller.· The next
> 15· ·safety after that was the keeper plate that keeps the
> 16· ·nut from actually turning.· And then we gave them a
> 17· ·bonus.· **We put a third keeper where the top of the**
> 18· ·**shaft has a large I think it was, like, a 20**
> 19· · **millimeter thread in it.· We got a bolt and just made,**
> 20· · **like, a bar to make it to where, you know, it couldn't**
> 21· · **fall through the boat with that on there.**

Sabety Dep., DE 154-3, 32:8-21.[3]

9. According to Sabety, the flat metal bar was "another safety" to prevent the rudder from falling away as it did in this case. Sabety Dep., DE 154-3, 6-13.

10. Defendant's expert, Rik Van Hemmen, noted in his expert report that the metal bar designed, fabricated and installed by Derecktor did not appear to be the work of a shipyard because it was so badly fabricated. Specifically, Defendant's expert reported:

> From the photographs of the securing device, it appears to have been manufactured by someone other than recently in a shipyard (spray

---

[3] The depositions of Ramos and Sabety were entered into evidence on 5-4-23 after the Court ruled on objections. Trial Tr. 5-4-23, 3:19-22.

4

>> paint, paint pattern, drilling after coating, mild steel, paint discoloration).

Tr. Ex. 268, Hemmen Report 1 (NH000225) p. 22.

11. At trial, Defendant's expert conceded that the flat metal bar was ineffective as a rudder securing mechanism, testifying "everybody agrees that it's not an effective way of doing it". Trial Tr. 6-2-23, 93:8 – 94:25.  He goes on to say that the problem is in "the way it's designed" and of course Derecktor was solely responsible for the design of the flat metal bar rudder securing device.  Trial Tr. 6-2-23, 93:20-24.

12. Hemmen further testified: "That bar is almost like a red herring. It did nothing."  And went on to say: "The flat bar is as effective as a little hula dancer on top of the rudder post.  It does nothing." Trial Tr. 6-2-23, 101:9-17.

13. Indeed, it is undisputed that the flat metal bar locking device was designed and installed by Derecktors as a rudder locking mechanism intended to prevent the rudders from falling out of the boat and that this mechanism was made from the wrong type of steel and was so badly designed that it was almost totally ineffective. Trial Tr. 6-2-23, p. 93:8-25.

14. As the Court noted in its findings, the parties' contract required all of Derecktor's work to be performed in a professional and workmanlike manner. Tr. 6-16-23, p. 2:8-12.  The Agreement states:

>> 36. Services
>>
>> (a) The Contractor agrees to perform the services for the Owner as described in this Yard Services Contract (the "Services"). The Contractor shall perform the Services in accordance with the provisions of this contract, and <u>in a professional and workmanlike manner with a degree of skill and care, consistent with local practice</u> and within normal working hours.

5

15. "To show breach of contract under Florida law, a plaintiff "must prove (1) a valid contract); (2) a material breach, and (3) damages". *Dagnesses v. Target Media Partners*, 711 F. App'x 927, 933 (11th Cir. 2017).

16. Derecktor breached clause 36(a) of the Agreement because the flat metal bar securing devices it designed and installed on the Vessel's two rudders were so poorly designed and fabricated that Defendant's own expert concluded the devices were not the work of a professional shipyard. Tr. Ex. 268, Hemmen Report 1 (NH000225) p. 22.

17. Further, this is a material breach of the Agreement because a properly designed and fabricated secondary rudder securing mechanism device would have prevented the loss. In other words, if Derecktor's backup rudder locking mechanism been designed and installed in a "workmanlike manner with a degree of skill and care, consistent with local practice", the device would have worked as intended and prevented the Vessel's rudder from falling away and the resulting damages suffered by the Plaintiff even if the primary locking device had been installed but failed. *Id.*

18. Derecktor also breached clause 36(c) of the Agreement, requiring Derecktor to obtain "any approvals or certificates required by the specified regulatory bodies", which in this case included the Vessel's classification society, The American Bureau of Shipping ("ABS"). *Id* at ¶ 36(c).

19. Derecktor breached clause 36(c) by failing to consult with ABS concerning the design of the flat metal bar Derecktor undertook to install as a backup rudder retention device. Trial Tr. 5-1-23, p. 96: 8-15 (Defendant corporate representative acknowledging that Defendant did not seek ABS approval for improvised locking mechanism alteration).

20. This breach is material because the purpose of classification societies, including ABS, is to ensure proper the proper construction, design and maintenance of vessels and their systems including their rudder retention systems. *See* Tr. Ex. 56, ABS Approved Rudder Locking Schematic; *De Espana v. Am. Bureau of Shipping, Inc.*, 691 F.3d 461, 464 ("Classification societies such as ABS, inter alia, establish rules for the design, construction, and continued structural and mechanical fitness of vessels that they class…").

21. If Derecktor had sought ABS approval for its added rudder securing mechanism, the design of device would doubtless have been vetted prior to installation then inspected after installation to ensure the proper design, fabrication and installation of the device. And of course, a properly designed, well-made and fully functional secondary rudder locking mechanism would have served its intended purpose and prevented the loss of the Vessel's rudder whether Derecktors failed to install the original securing bolt locking or it was somehow, for some reason, removed after the Vessel left Derecktor's shipyard.

22. Derecktor's poorly designed and fabricated rudder securing device also breached the warranty of workmanlike performance, which is implied in every marine contract and obligates every contractor "to perform services with a reasonable level of '[c]ompetency and safety.'" *See Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1315 (11th Cir. 2003). Even according to Defendant's own witnesses, the services Derecktor's provided to design and fabricate the secondary rudder securing mechanism it installed were not performed with a reasonable level of competency.

23. Further, the testimony of the Defendant's shows that the purpose of the flat metal bar was to secure the Vessel's rudder's and prevent them from falling away if the primary locking mechanism failed. Thus, the failure of the device and all damages flowing from the loss of the

rudder are foreseeable and compensable. *Miro Holdings, LLC v. Gyro-Gale Corp.*, 2021 U.S. Dist. LEXIS 144284 at 13. ("The failure to [perform services with a reasonable level of competency and safety]… provides shipowners with a right to indemnification for foreseeable loss resulting therefrom.").

24. In its findings of fact, the Court also considered Chief Engineer Chin's purported hammering of the flat metal bar. However C.E. Chin's actions or inactions concerning the flat metal bar are unsubstantiated and do not go to the central issue of Derecktor's liability for breach of contract and breach of the warranty of workmanlike performance.

25. The only evidence concerning Chief Engineer Chin's interaction with the flat metal bar is triple hearsay and is so vague that it should be given little or no weight. In fact, this evidence consists entirely triple hearsay from an expert witness. Tr. Ex. 128 p. 14, Robinson Report[4]. Robinson reports that he was told by someone (who did not appear at trial) that former Chief Engineer Chin (who did not appear at trial) told Robinson (at some unknown time, on an unknown date, in an unknown location, under unknown circumstances) that Chinn attempted to hammer the flat metal bar on one of the two rudders flat. *Id.*

26. Importantly, it is unclear even whether Chin's purported hammering occurred before, after or during the loss at issue in this case as the report only notes that the purported hammering occurred "on or after 28 February 2018"[5]. *Id.*

---

[4] "At a time also unknown to us, but on or after 28 February 2018, Chief Engineer Chin, as we have been informed that this work was undertaken by him, completed repairs on the starboard stock retaining bar as this was beginning to bend upwards (from the unwinding movement of the heavy hex nut) and proceeded to hammer the retaining bar flat again, replacing when complete."

[5] Chin joined the Vessel on 2-28-18 so this of course is the earliest date the event could have occurred. Tr. Ex. 128 p. 11. At trial Robinson incorrectly confirmed counsel's leading question that his report stated the hammering occurred between 2-2018 and 3-2018. Trial Tr. 5.2.23, 45:9-13.

27. This unsubstantiated, vague, triple hearsay is inadmissible. An expert my rely on inadmissible hearsay in forming his opinions, "Rule 703, however, is not an open door to all inadmissible evidence disguised as expert opinion." *United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir. 1987). "[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (internal citation and quotation omitted); *see also Pelster v. Ray*, 987 F.2d 514, 527 (8th Cir. 1993) (parties may not "bring inadmissible hearsay and documents before the jury in the guise of expert testimony to prove subsidiary facts in their evidentiary chain that the jury is entitled to decide for itself by examining evidence that meets the requirements for admissibility").

28. Similarly, there is no evidence to support a claim that Chinn hit the hex nut with a hammer. Defendant's expert conceded the hammer marks found on the hex nut "could have been there for 20 years". Trial Tr. 6-2-23, 77:25-78:1.

29. The claims concerning C.E. Chin can be given little or no weight because they are based on inadmissible hearsay. This is especially true given that there are no logbook entries or reliable evidence whatsoever supporting the triple hearsay claim that C.E. Chin hammered the flat metal bar or otherwise knew anything was wrong with the rudders prior to the loss.

30. The admissable evidence does not support a finding that C.E. Chin acted unreasonably in performing his duties, let alone that he acted so negligently that his negligence was a superseding and intervening cause of the loss. *see In re 3M Combat Arms Earplug Prods. Liab. Litig.,* 2022 U.S. Dist. LEXIS 105592, at *43 (N.D. Fla. May 2, 2022) ("[a] superseding cause is an unforeseeable intervening act that cuts off the defendant's liability"…[t]o be a superseding cause, the intervening act must be "so unusual, so out of the ordinary, so

unforeseeable as to be unanticipatable from a legal point of view'"") (internal citation omitted); *see also Bell v. Beyel Bros.*, No. 2:16-cv-14461, 2017 U.S. Dist. LEXIS 54474, at *11 n. 4 (S.D. Fla. Apr. 7, 2017) (citing 9th Circuit opinion to highlight that "a plaintiff has the burden to rebut a superseding cause theory only once a defendant "produces sufficient evidence to raise the issue"). The law does not allow Derecktor to escape liability by blaming the Defendant for not catching and fixing its mistakes, especially where expert witness testimony indicates that a chief engineer is not required to have the expertise to diagnose the issue and would not be expected to know the technical specifications and layout of the Vessel's ABS approved rudder locking system. Trial Tr. 5-2-23, p. 47:3-25, p. 48:1.

31. Further, Chin could not be blamed if he assumed that the flat metal bar installed by Derecktor was the approved and proper rudder locking mechanism because it would be insane for a reputable shipyard to gratuitously install an ineffectual "red herring" locking device on the rudders of a multimillion-dollar yacht during a multimillion-dollar refit. Trial Tr. 6-2-23, p. 101: 9-16.

**Standard of Review**

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, the Court has broad discretion to reconsider its entry of Final Judgment. *See Region 8 Forest Serv. Timber Purchases Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993). While Rule 59(e) does not set forth any specific criteria, the courts in this district have delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Williams v. Cruise Ships Catering and Service International*, 320 F. Supp. 2d 1347 (S.D. Fla. 2004); *Bautista v. Cruise Ships Catering and Services International*, 2004 U.S. Dist. LEXIS 20921 (S.D. Fla. 2004); *In re:*

10

*Managed Care Litigation*, 2002 U.S. Dist. LEXIS 11809 (S.D. Fla. 2002); *Sussman v. Salem, Saxon & Nielson, P.A.*, 153 F.R.D. 689 (M.D. Fla. 1994); *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F.Supp.2d 1316 (M.D. Fla. 1999); *Z.K. Marine, Inc. v. Southern Offshore Yachts, Inc.*, 808 F. Supp. 1561 (S.D. Fla. 1992). "A district court abuses its discretion 'when a relevant factor deserving a significant weight is overlooked, when an improper factor deserving of significant weight is overlooked, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales.'" *Williams v. Cruise Ships Catering and Service International*, 320 F. Supp. 2d 1347, 1358 (S.D. Fla. 2004). One purpose of a motion for reconsideration is to correct a manifest error in law. *In re: Managed Care Litigation*, 2002 U.S. Dist. LEXIS 11809 (S.D. Fla. 2002); *Z.K. Marine, Inc. v. Southern Offshore Yachts, Inc.*, 808 F. Supp. 1561 (S.D. Fla. 1992). A motion for reconsideration is appropriate where the court has misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension. *In re: Managed Care Litigation*, 2002 U.S. Dist. LEXIS 11809 (S.D. Fla. 2002); *Z.K. Marine, Inc. v. Southern Offshore Yachts, Inc.*, 808 F. Supp. 1561 (S.D. Fla. 1992).

Pursuant to Federal Rule 60(a): "Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."

Here, Plaintiff requests the Court reconsider or amend its findings of fact and conclusions of law and its final judgment in favor of Defendant to consider a basis for liability argued by Plaintiff but that was not addressed by the Court, namely: Derecktor's breach of contract and breach of the warranty of workmanlike performance arising from the deficient, design, fabrication

and installation of the flat metal bar installed by Derecktor for the express purpose of preventing the Vessel's rudder from falling out if, as here, the Vessel's primary locking mechanism failed.

WHEREFORE, the Plaintiff requests the Court reconsider its findings of fact and conclusions of law and its final judgment in favor of Defendants.

Dated: July 14, 2023

Respectfully submitted,

**MOORE & COMPANY, P.A.**
*Counsel for Plaintiff*
255 Aragon Avenue, Third Floor
Coral Gables, Florida 33134
Telephone: (786) 221-0600
Facsimile: (786) 221-0601
cnaughton@moore-and-co.com
michael@moore-and-co.com

s/ Clay Naughton
Clay Naughton, Esq.
Florida Bar No. 29302

**Certificate of Conferral**

Counsel for Plaintiff certifies that he conferred in good faith with counsel for Defendant who objects to the relief requested herein.

s/ Clay Naughton

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  Copies of this pleading will be automatically served on all counsel of record through the Court's CM/ECF system.

                                                                  s/ Clay Naughton

**PLAINTIFF PROPOSED FINDING OF LAW**

1. "To show breach of contract under Florida law, a plaintiff "must prove (1) a valid contract); (2) a material breach, and (3) damages".  *Dagnesses v. Target Media Partners*, 711 F. App'x 927, 933 (11th Cir. 2017).

2. In the Eleventh Circuit, district courts apply a three-part test to determine whether a limitation of liability clause is enforceable in a maritime contract.  *Mount Sage, Ltd. V. Rolls-Royce Commer. Marine Inc.*, 635 F.App'x 833, 836 (11th Cir. 2016) (citing *Diesel "Repower", Inc., v. Islander Invs. Ltd.,* 271 F.3d 1318, 1324 (11th Cir. 2001)).  Limitation of liability clauses are valid if they meet three criteria: "(1) clearly and unequivocally indicate the parties' intentions; (2) not absolve the repairer of all liability and still provide a deterrent to negligence; and (3) the "businessmen" must have equal bargaining power so there is not overreaching."  *Id.* at 836-37 (citation omitted) (emphasis added).

3. "Claims for breach of warranty of workmanlike performance sound in contract".  *Kol B'Seder, Inc. v. Certain Underwriters at Lloyd's London*, 766 F. App'x 795, 801 (11th Cir. 2019).

4. Invoices for cost of repairs are accurate statement of damages suffered by Plaintiff. *Kol B'Seder, Inc. v. Certain Underwriters at Lloyd's of London*, 766 F. App'x 795, 804 (11th Cir. 2019).

5. "The warranty of workmanlike performance is an implied warranty that is imposed on a maritime service contractor and requires services to be performed with reasonable care, skill and safety." *Delta November, LLC v. Baker*, No. 10-10086-CIV, 2011 U.S. Dist. LEXIS 116000, 2011 WL 4501118, at *3 (S.D. Fla. Aug. 23, 2011) (citing Vierling v. *Celebrity Cruises, Inc.*, 339 F.3d 1309, 1315 (11th Cir. 2003)). The warranty of workmanlike performance, which was established in *Ryan Stevedoring Co. v. Pan Atlantic Steamship Corp.*, 350 U.S. 124, 76 S. Ct. 232, 100 L. Ed. 133 (1956), "is a product of the admiralty courts and a creature of admiralty law." *Centraal Stikstof Verkoopkanter, N.V. v. Walsh Stevedoring Co.*, 380 F.2d 523, 529 (5th Cir. 1967). "As an admiralty law theory, this implied warranty applies only to admiralty contracts, specifically admiralty service contracts." *Fed. Ins. Co. v. Mathews Bros., LLC*, Civil Action No. RDB-14-3794, 2015 U.S. Dist. LEXIS 107049, 2015 WL 4879194, at *7 (D. Md. Aug. 14, 2015); *see also Centraal Stikstof*, 380 F.2d at 529 ("Those cases in which the doctrine has been applied have been admiralty cases which presented substantially similar circumstances to those existing in Ryan.") (citations omitted). *All Underwriters Subscribing to Policy of Ins. No. B0621mmilsyb15055 v. Rika Boats Ltd.*, No. 16-20498-CIV-LENARD/GOODMAN, 2017 U.S. Dist. LEXIS 107873, at *6 (S.D. Fla. July 11, 2017)

6. Admiralty law recognizes an implied warranty of workmanlike service [*5] which arises from contractual relationships. *Tai-Pan, Inc. v. Keith Marine, Inc.*, 1997 AMC 2447, 2453

(M.D. Fla. 1997); *Little Beaver Enter. v. Humphreys Rys, Inc.*, 719 F.2d 75, 77-78 (4th Cir. 1983); *Coffman v. Hawkins & Hawkins Drilling Co., Inc.*, 594 F.2d 152, 154 (5th Cir. 1979) ("independent shore-based contractors that go aboard a vessel 'by the owner's arrangement or by his consent to perform service for the ship's benefit impliedly warrant to the shipowner that they will accomplish their task in a workmanlike manner. The essence of the contractor's warranty of workmanlike performance is to perform its work 'properly and safely.'"). Because this is an automatic term inserted into every admiralty service contract it makes no difference that the contract does not explicitly mention this duty of care. Id; *Little Beaver Enter.*, 719 F.2d at 78 ("This warranty need not be express to bind the ship repairer to use the degree of diligence, attention and skill adequate to complete the task."); *Union Marine & General Ins. Co. v. Am. Export Lines*, 274 F. Supp. 123, 128 (S.D.N.Y. 1966) ("contracts of work and labor contain an implied warranty that the work will be done in skilled and workmanlike manner, and the fact that the agreement is oral is immaterial."). The warranty of workmanlike performance is a duty to perform the work "properly and safely," Coffman, 594 F.2d at 154, and with a "'degree of diligence, attention and skill adequate to complete the task.'" *Muller Boat Works, Inc. v. Unnamed 52' House Barge*, 464 F. Supp. 2d 127, 146 (S.D.N.Y. 2006) (quoting Coffman, 594 F.2d. 154). The implied warranty of workmanlike performance applies [*6] to purely economic property loses. *Tai-Pan, 1997 AMC at 2453*. *Taylor v. Carey's Diesel*, No. 07-80106-CIV-DIMITROULEAS, 2007 U.S. Dist. LEXIS 112946, at *4-6 (S.D. Fla. May 24, 2007)

7. Plaintiff's tort-based claim of negligence is subsumed within the breach of the implied warranty claim. Diesel "Repower," Inc., 271 F.3d at 1326 (citing E. River

*Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 871, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986)); *Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 766 (5th Cir. 1989) ("Whether the negligence alleged is in the performance of a contract for services, or in a contract for the sale of goods, the resulting economic loss is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law." (quotation omitted)).

*Travelers Ins. Co. v. Commercial Cool-Temp Corp.*, No. 11-61748-CIV-DIMITROULEAS/S, 2012 U.S. Dist. LEXIS 201547, at *16 (S.D. Fla. Sep. 26, 2012)

8. A contract to repair a vessel is maritime in nature. *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1352 (S.D. Fla. 2007), aff'd, 308 Fed. Appx. 389 (11th Cir. 2009). The elements of a maritime breach-of-contract claim under admiralty law and Florida law are the same: "(1) a valid contract; (2) a material breach; and (3) damages." *Seacor Marine LLC v. FPC Sea Striker*, 2015 U.S. Dist. LEXIS 4452, at *4 (M.D. Fla. Jan. 13, 2015) (citations omitted). A valid contract requires offer and acceptance and a meeting of the minds as to the terms of the agreement. *Roberts & Schaefer Co. v. Hardaway Co.*, 152 F.3d 1283, 1290 (11th Cir. 1998). "To constitute a vital or material breach, a party's nonperformance must 'go to the essence of the contract'." *MDS (Can.), Inc. v. RAD Source Techs., Inc.,* 720 F.3d 833, 849 (11th Cir. 2013) (*quoting in part Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So. 2d 853, 857 (Fla. Dist. Ct. App. 1972)).

Dated: October 28, 2022                   Respectfully submitted,

                                            **MOORE & COMPANY, P.A.**
*Counsel for Plaintiff*
255 Aragon Avenue, Third Floor
Coral Gables, Florida 33134

        Telephone: (786) 221-0600
        Facsimile: (786) 221-0601
        cnaughton@moore-and-co.com
        michael@moore-and-co.com

        s/ Clay Naughton
        Clay Naughton, Esq.
        Florida Bar No. 29302

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. Copies of this pleading will be automatically served on all counsel of record through the Court's CM/ECF system.

        s/ Clay Naughton